IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NICHOLAS LAINO,

    Plaintiff,

v.

NORTHERN CHILDREN'S SERVICES,

    Defendant.

CIVIL ACTION
NO. 17-4637

**OPINION**

**Slomsky, J.**      September 25, 2018

## I.    INTRODUCTION

Plaintiff Nicholas Laino ("Plaintiff"), a Caucasian, brings this suit against his former employer, Defendant Northern Children's Services ("Defendant"), alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 32 U.S.C. § 2000(e), et seq., and alleging interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 621, et seq. (Doc. No. 8) Plaintiff claims that Defendant afforded him differential treatment because of his race and terminated him in retaliation for reporting the race discrimination and for requesting short-term leave under the FMLA.

In Count I of the Complaint, Plaintiff alleges violations of Title VII. He argues that Defendant discriminated against him by terminating him on the basis of race and by subjecting him to disparate treatment. (Id. ¶ 53.) He further argues that Defendant retaliated against him for reporting race discrimination. (Id. ¶ 55.) In Count II, Plaintiff asserts violations of the FMLA, claiming that Defendant interfered with his rights under the FMLA by failing to grant his request for short-term leave. (Id. ¶ 60.) Moreover, he claims that Defendant terminated his employment in retaliation for his request for short-term leave. (Id. ¶ 61.) As a result of

1

Defendant's alleged discrimination, Plaintiff claims that he has suffered loss of employment, promotion benefits, earnings and earning potential, other significant economic benefits, pain and suffering, emotional distress and humiliation. (Id. ¶¶ 56, 64.)

On February 2, 2018, Defendant filed a Motion to Dismiss for Failure to State a Claim. (Doc. No. 10.) Plaintiff filed a Brief in Opposition to Defendant's Motion (Doc. No. 11), and on March 27, 2018, the Court held a hearing on Defendant's Motion. (Doc. No. 13.) Defendant's Motion to Dismiss is now ripe for a decision. For reasons that follow, the Court will deny Defendant's Motion.

## II. BACKGROUND

In or about April 2014, Plaintiff Nicholas Laino, a Caucasian, began working for Defendant Northern Children's Services as a Facilities Director, and as such, was responsible for overseeing Defendant's entire Facilities Department. (Id. ¶ 12) In or about January 2015, Nathan Oliver, an African-American, was hired as Chief Operating Officer and became Plaintiff's immediate supervisor. (Id. ¶ 14.) At that time, Plaintiff was the only Caucasian in the Facilities Department. (Id. ¶ 15.) The other employees in the department were all African-Americans. (Id.)

Plaintiff submits that Oliver frequently treated him less favorably than African-American employees. (Id. ¶ 16.) For instance, Plaintiff claims that Oliver refused to correspond with him about issues in the Facilities Department and frequently spoke to Plaintiff's subordinates about matters that should have gone through him. (Id. ¶¶ 17-18.) In addition, Plaintiff asserts that Oliver used profanities and expletives when he spoke to him, but never addressed African-American employees in that way. (Id. ¶¶ 20-21.)

In or about fall 2015, Plaintiff brought his concerns to Oliver and informed him that Oliver's actions undermined his authority, to which Oliver allegedly replied, "Your days are

numbered." (Id. ¶¶ 22-23.) According to the Complaint, Plaintiff understood Oliver's response to constitute both a threat to terminate his employment and a threat to his physical well-being. (Id. ¶ 25.) Plaintiff believes Oliver mistreated and threatened him because of his race. (Id. ¶ 26.)

Thereafter, in or about November 2015, Plaintiff filed a complaint regarding Oliver's workplace conduct with Robin Thomas, Defendant's Human Resources Director. (Id. ¶ 27.) At or around the same time, Plaintiff "informed Ms. Thomas that his health care provider had requested he commence a leave of absence of one (1) to three (3) weeks regarding treatment for his Generalized Anxiety Disorder." (Id. ¶ 28.) Plaintiff submits that under the FMLA he was eligible for the leave because "he had worked for Defendant for more than one (1) consecutive year and worked more than twelve hundred fifty (1250) hours during the past calendar year." (Doc. No 8 ¶ 31.) Nevertheless, Thomas refused to grant him the leave of absence, citing his heavy workload. (Id. ¶ 29.)

Next, Plaintiff reported Oliver's alleged race discrimination to Renata Cobbs-Fletcher, Defendant's Chief Executive Officer, and notified her that Oliver had threatened him with physical violence and afforded him differential treatment based on his race. (Id. ¶ 32.) According to the Complaint, Cobbs-Fletcher failed to address Plaintiff's concerns about Oliver and never took any steps to remedy the situation. (Id. ¶ 34.)

Following these events, Plaintiff alleges that Defendant "embarked on a campaign of retaliation against him" and "subjected [him] to unjustifiable discipline for events at its workplace for which he could not logically be responsible." (Id. ¶¶ 35, 42.) For instance, Plaintiff claims that Cobbs-Fletcher criticized him for a window that had been broken by an African-American employee, despite her knowing that the other employee was at fault. (Id. ¶¶ 36-37.) Plaintiff also alleges that Defendant cancelled necessary cleaning services for which he

3

had contracted without consulting him. (Id. ¶¶ 38-39.) Additionally, on or about January 21, 2016, Plaintiff observed that a workplace boiler was malfunctioning after a mechanic had worked on it. (Id. ¶ 40.) Plaintiff alleges that he immediately reported that the water boiler was a safety hazard, but Defendant still disciplined him in connection with the issue. (Id. ¶ 41.) Although another employee created the safety hazard, Cobbs-Fletcher issued a written warning to Plaintiff and placed him on a Performance Improvement Plan. (Id.)

Finally, on or about January 25, 2016, Defendant terminated Plaintiff after he failed to arrange to have Defendant's premises plowed in a timely fashion following a January 23, 2016 snowstorm. (Id. ¶ 43.) Plaintiff submits that the failure to plow the premises was not his fault because (1) he was off-duty during the incident and a New Jersey State of Emergency prevented him from travelling to work, and (2) Defendant relied on a third-party contractor for snow removal services and Plaintiff did not exercise control over that contractor. (Id. ¶¶ 44-45.) Consequently, Plaintiff does not believe that Defendant terminated him because of the plowing issue. Rather, he alleges that Defendant terminated him on the basis of race and in retaliation for reporting race discrimination and requesting short-term leave pursuant to the FMLA. (Id. ¶ 49.)

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556

U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

In the present action, Defendant advances four arguments in support of its Motion to Dismiss for Failure to State a Claim. Specifically, Defendant argues that (1) Plaintiff failed to plead a prima facie case of disparate treatment based on race under Title VII; (2) Plaintiff failed to plead a prima facie case of retaliation under Title VII; (3) Plaintiff failed to plead an interference claim under the FMLA; and (4) Plaintiff failed to plead a retaliation claim under the FMLA. (Doc. No. 10-1.)

After reviewing the facts as set forth above, the Court is not persuaded by Defendant's arguments and instead finds that Plaintiff has met his burden at this stage in the proceedings. Thus, for the reasons discussed below, the Court will deny Defendant's Motion to Dismiss.

### A. Plaintiff Has Pled Facts Sufficient to State a Plausible Claim of Disparate Treatment on the Basis of Race Under Title VII

In the present action, Defendant first argues that Plaintiff failed to establish a prima facie case of disparate treatment on the basis of race under Title VII. (Doc. No. 10-1 at 5.) Title VII proscribes employment discrimination on the basis of race, religion, sex, color, or national origin. 42 U.S.C. § 2000e-2(a). When, as here, there is no direct evidence of discrimination, a court analyzes a Title VII disparate treatment claim under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Parker v. Verizon Pa. Inc., 309 Fed. App'x. 551, 555 (3d Cir. 2009).

Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).

Then, after a plaintiff has pleaded a prima facie case, the burden of production shifts to the defendant to articulate some legitimate nondiscriminatory reason for the challenged employment action. Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013). If the defendant meets this burden, the plaintiff ultimately must prove by a preponderance of the evidence that the legitimate reason offered by the defendant is merely pretext for discrimination. Id. (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

The Court of Appeals has stressed that a complaint brought under Title VII need not establish a prima facie case to survive a motion to dismiss. Indeed, a prima facie case is "an evidentiary standard, not a pleading requirement." Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016) (quoting Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510 (2002)). As such, the post-Twombly pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556.)

Here, Defendant argues that Plaintiff cannot establish a prima facie case because he has not pled "any facts that state that other employees of different races were treated more favorably." (Doc. No. 10-1 at 5.) The Court disagrees. Plaintiff has cited specific instances after Oliver's hire when Defendant and Defendant's employees afforded him less favorable treatment than African-American employees. Specifically, Plaintiff submits that Oliver used profanity and expletives when he spoke to him, but did not do so when he spoke to African-American employees. (Doc. No 8 ¶¶ 20-21.) Further, Plaintiff pleads facts showing that Oliver often undermined him and chose to work with African-American employees instead. (Id. ¶¶ 16-18.) In addition, both Thomas and Cobbs-Fletcher failed to take remedial action when Plaintiff reported that Oliver threatened him with physical violence, threatened to terminate his position,

7

and treated him differently because of his race. (Id. ¶¶ 32, 37.) Accepting these well-pleaded facts as true, the Court is persuaded that Plaintiff has pled facts sufficient to raise a reasonable expectation that discovery will reveal evidence to establish a prima facie case of disparate treatment on the basis of race.

### B. Plaintiff Has Pled Facts Sufficient to State a Plausible Claim of Retaliation under Title VII

Next, Defendant contends that Plaintiff failed to state a claim of retaliation based on race under Title VII because "he failed to satisfy the requirements necessary to demonstrate a prima facie case." (Doc. No. 10-1 at 6.) To establish a prima facie case of retaliation, the plaintiff must show that (1) he engaged in a protected activity; (2) an adverse action occurred either after or contemporaneous with his protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).

Under Title VII's anti-retaliation provision, "protected activity" refers either to participating in Title VII proceedings or opposing discrimination made unlawful under the auspices of the statute. Slagle v. Cty. of Clarion, 435 F.3d 262, 266 (3d Cir. 2006). To show the causal connection necessary to establish the third prong of a prima facie case of retaliation, "a plaintiff must usually prove either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Rink v. Northeastern Educational Intermediate Unit 19, 717 Fed. App'x. 126, 133 (3d Cir. 2017) (quoting Lauren W. ex. rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).

In this case, Defendant argues that Plaintiff cannot establish a prima facie case of retaliation because "the Complaint contains no specific allegations seeking to establish causal

connection between the protected activity and the termination of his employment." (Doc. No. 10-1 at 7.) Further, it asserts that merely suffering an adverse employment action two months after reporting discrimination is not enough to establish a retaliation claim at this stage of the proceedings. (Id. at 8.) Again, the Court disagrees.

Here, Plaintiff engaged in protected activity under the anti-retaliation provision of Title VII when he reported to Thomas and Cobbs-Fletcher his belief that Oliver treated him less favorably because of his race. According to the Complaint, Plaintiff was terminated two months after he engaged in that protected activity. (Id. ¶ 43.) Contrary to Defendant's argument, however, Plaintiff pleads more than mere temporal proximity. First, Plaintiff avers that neither Thomas nor Cobbs-Fletcher addressed his allegations of race discrimination or made any efforts to remedy the situation. (Id. ¶¶ 32, 37.) Second, Plaintiff claims that Cobbs-Fletcher criticized him for a window that had been broken by an African-American employee, despite her knowing that the other employee was at fault. (Id. ¶¶ 36-37.) Third, Plaintiff alleges that he was unfairly disciplined after he reported that a broken water boiler had become a safety hazard under another employee's watch. (Id. ¶¶ 40-41.) Fourth, he contends that Defendant cancelled a necessary cleaning service for which he had contracted without consulting him. (Id. ¶ 38.) Finally, Plaintiff submits that Defendant terminated him because a third-party snow removal company over which he had no control failed to timely plow Defendant's premises after a snowstorm. (Id. ¶¶ 43-46.) Taken as true, these events constitute a pattern of antagonism that closely follows Plaintiff's complaints to Thomas and Cobbs-Fletcher. As such, the Court is persuaded that Plaintiff has pled sufficient facts to raise a reasonable expectation that discovery will reveal evidence necessary to establish a prima facie case of retaliation.

### C. Plaintiff Has Pled Facts Sufficient to State a Plausible Claim of Interference Under the FMLA.

Defendant next argues that Plaintiff has failed to sufficiently plead a prima facie case of interference under the FMLA. (Doc. No. 10-1 at 8.) The Family Medical Leave Act of 1993 ("FMLA") allows "employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1); Lupyan v. Corinthian Colls. Inc., 761 F.3d 314, 317 (3d Cir. 2016). The FMLA entitles employees to take twelve weeks of leave during any twelve-month period if a "serious health condition … makes the employee unable to perform the functions of the position of such employee." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir. 2007) (quoting 29 U.S.C. § 2612(a)(1)(D)). In addition, the FMLA creates a cause of action for interference with the rights it bestows. 29 U.S.C. § 2615(a)(1).

To establish a claim of interference under the FMLA, a plaintiff must show that (1) he was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA; (3) he was entitled to FMLA leave; (4) he gave notice to the defendant of his intention to take FMLA leave; and (5) the defendant denied him benefits to which he was entitled under the FMLA. Ross v. Gilhuly, 755 F.3d 185, 191-92 (3d Cir. 2014). In short, a plaintiff need only show that he was entitled to benefits under the FMLA and that he was denied them. Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005).

Here, there is no dispute that Plaintiff meets the first, second, and fifth prongs of an interference claim, namely that he was an eligible employee, Defendant was a covered employer, and Defendant denied Plaintiff's request for leave. Rather, Defendant argues that Plaintiff does not satisfy the third and fourth prongs. (Doc. No. 10-1 at 8.) First, Defendant contends that Plaintiff has not established that he was entitled to FMLA benefits because he did not plead facts sufficient to show he had a serious medical condition. (Id.) To support its assertion, Defendant

claims that Plaintiff did not specifically plead the type of medical treatment he required and that "[s]imply stating that one has Generalized Anxiety Disorder is not enough under the FMLA." (Id. at 8-9.) In the Court's view, this argument is unconvincing.

Under the FMLA, an employee is entitled to benefits when he suffers from a serious health condition. The FMLA defines a "serious health condition" to mean "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider. 29 U.S.C. § 2611(11). In turn, "continuing treatment by a health care provider" is defined as "a period of incapacity of more than three consecutive, full calendar days … that also involves … [t]reatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.115(a)(2).

In the instant case, Plaintiff alleges that in or around November 2015, he "informed Ms. Thomas that his health care provider had requested he commence a leave of absence of one (1) to three (3) weeks regarding treatment for his Generalized Anxiety Disorder, a serious health condition within the meaning of the FMLA." (Doc. No. 8 ¶ 28.) Contrary to Defendant's arguments, Plaintiff did not merely state that he has Generalized Anxiety Disorder. Rather, he informed Thomas of his medical condition, notified her that he had already sought treatment from a health care provider, and relayed his health care provider's request that he take a leave of absence for a period of one to three weeks. (Id.) Indeed, pursuant to the FMLA and regulations promulgated under it, Plaintiff has sufficiently alleged that at the time he requested short-term leave, he had a mental condition that involved continuing treatment from a health care provider.

11

Thus, at this stage in the proceedings, Plaintiff has pled factual content sufficient for the Court to draw the reasonable inference that he was eligible for benefits under the FMLA.

Second, Defendant asserts that Plaintiff has not established the fourth prong of an interference claim because he did not provide Defendant with proper notice that he wished to invoke his rights under the FMLA. (Doc. No. 10-1 at 9.) This is not a tenable argument. To invoke rights under the FMLA, an employee must provide adequate notice of his need for FMLA leave. 29 U.S.C. § 2612(e)(2). The Court of Appeals has emphasized that this is not a "formalistic or stringent standard." Lichtenstein v. University of Pittsburgh Medical Center, 691 F.3d 294, 303 (3d Cir. 2012). Indeed, the regulations explain that simple verbal notice is sufficient:

> An employee shall provide at least verbal notice to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. <u>The employee need not expressly asserts rights under the FMLA or even mention the FMLA</u>.

Sarnowski, 510 F.3d at 402 (quoting 29 C.F.R. § 825.302(c)) (emphasis added). To determine the sufficiency of notice, the threshold question is "how the information is conveyed to the employer is reasonably interpreted." Id. Where it is unclear whether the employee's request triggers the FMLA, the onus is on the employer to further inquire about the reason for the leave. Lichtenstein, 691 F.3d at 303.

As noted previously, Plaintiff submits that in or around November 2015, he "informed Ms. Thomas that his health care provider had requested he commence a leave of absence of one (1) to three (3) weeks regarding treatment for his Generalized Anxiety Disorder, a serious health condition within the meaning of the FMLA." (Doc. No. 8 ¶ 28.) Even if Plaintiff did not specifically mention or invoke the FMLA , he told Thomas that he was suffering from a serious medical condition, notified her that he had seen a health care provider, and informed her of his

health care provider's request that he take one to three weeks leave from work. (Id.) Taking these allegations as true, it is clear that Plaintiff provided Thomas with enough information to put her on notice that his request triggered the FMLA. Accordingly, the Court is persuaded that Plaintiff's interference claim should survive Defendant's Motion to Dismiss.

### D. Plaintiff Has Pled Facts Sufficient to State a Plausible Claim of Retaliation Under the FMLA

Finally, Defendant argues that Plaintiff has failed to plead a prima facie case of retaliation under the FMLA. (Doc. No. 10-1 at 10.) In addition to creating employee rights and prohibiting interference, the FMLA proscribes retaliation in connection with an employee's request for leave. See 29 U.S.C. § 2615(a)(2). To establish a retaliation claim under the FMLA, a plaintiff must show that: (1) he invoked his right to FMLA-qualifying leave; (2) he suffered an adverse employment decision; and (3) the adverse action was causally related to his invocation of rights. Ross, 755 F.3d at 193.

Here, Defendant advances arguments on the first and third prongs of the prima facie case of retaliation. (Doc. No. 10-1 at 10.) To attack the first prong, Defendant restates its argument that Plaintiff did not invoke his rights under the FMLA because he never gave Defendant proper notice that the FMLA might apply. (Id.) Once again, the Court disagrees. As explained above, Plaintiff has sufficiently pled facts that lead to a reasonable inference that he notified Defendant of his intent to take FMLA leave.

Next, under the third prong, Defendant argues that Plaintiff has failed to plead that his termination was causally related to his request for short-term leave. (Id.) Further, Defendant contends Plaintiff was not fired because he requested short-term leave. (Id.) Rather, Defendant claims that it fired him because of the broken window incident, the workplace boiler safety hazard, and the failure to plow situation. (Id.) The Court of Appeals has noted that the analysis

13

of FMLA retaliation claims mirrors the analysis of Title VII retaliation claims.  See Ross, 755 F.3d at 193 (citing Lichtenstein, 691F.3d at 302.)  For this reason, the Court's analysis of Plaintiff's FMLA retaliation claim tracks its analysis of Plaintiff's Title VII retaliation claim.

While Defendant argues that the three incidents leading up to Plaintiff's termination were causes of that termination, Plaintiff characterizes them as retaliation.  Specifically, Plaintiff alleges that after his request for leave, Defendant "embarked on a campaign of retaliation against him" and "subjected [him] to unjustifiable discipline for events at its workplace for which he logically could not logically be responsible." (Doc. No. 8 ¶¶ 35, 42.)  To support this assertion, he cites to the broken window criticism, the workplace boiler written warning, and his termination following the failure to plow incident.   (Id. ¶¶ 36-45.)  As above, the Court is persuaded that this confluence of events and their temporal proximity to Plaintiff's request for leave gives rise to an inference of retaliation.  Contrary to Defendant's arguments, the Court is persuaded that Plaintiff has pled a plausible claim of retaliation under the FMLA.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim (Doc. No. 10) will be denied.  An appropriate Order follows.